UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DENISE RAVENEL | ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) (Jury Trial Requested) |
| v. | ) |
| SOUTH CAROLINA DEPARTMENT OF CORRECTIONS | ) |
| Defendant. | ) |

## COMPLAINT

Comes now, Denise Ravenel, (hereinafter referred to as "Plaintiff") and files this Complaint against the South Carolina Department of Corrections ("SCDC") seeking to recover damages for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and as amended ("ADA").

## THE PARTIES

1.     Denise Ravenel ("Plaintiff") is an adult citizen of Hollywood, South Carolina. During all relevant times, Plaintiff was an "employee" within the meaning of the ADA.

2.     Defendant South Carolina Department of Corrections ("SCDC" or "Defendant"), an executive agency of the State of South Carolina reporting directly to the Governor. The SCDC houses inmates pursuant to sentencing orders where the sentence exceeds 90 days. The SCDC employees approximately 5,000 employees and is an "employer" within the meaning of the ADA.

1

**JURISDICTION AND VENUE**

3. This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. and as amended ("ADA"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

4. Venue is appropriate within this District because the causes of action alleged to have occurred in this Complaint occurred in the District and in this Division.

5. Plaintiff timely filed a Charge of Discrimination on or about March 30, 2021, with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination under the ADA. The EEOC issued a Notice of Right to Sue on or about February 27, 2023. Thus Plaintiff, has exhausted her administrative remedies under the ADA.

**RELEVANT FACTS**

6. Plaintiff began working for the SCDC in November 2014. Specifically, Plaintiff worked as a Switchboard Operator/Administrative Assistant at the Lieber Correctional Institute in Ridgeville, South Carolina.

7. This position is administrative and requires very little physical exertion. Although she did have exposure to and contact with inmates, she was neither a prison guard nor detention officer and there was no expectation that she be able to physically restrain inmates or defend herself in any altercation with an inmate, with or without accommodation. Put simpler, having the physical ability to restrain or engage in altercations with inmates was not a requirement for her or an essential duty of her job.

8. Before working at SCDC, Plaintiff suffered an on-the-job injury to her lower extremity, including her right ankle, while working at the Medical University of South Carolina ("MUSC").

9. Despite her injury, Plaintiff worked for SCDC for almost four (4) years without incident.

10. Although she did have work restrictions, her job at the SCDC was administrative in nature and thus, the work restrictions did not affect her ability to perform the essential functions of her job.

11. Due to Plaintiff's ankle injury worsening in or around June 2018, she required surgery.

12. Due to the surgery and subsequent recovery period, Plaintiff was required to miss numerous months of work. Plaintiff's leave was classified as Workers Compensation leave and she remained out until January 2019.

13. In or around January 2019, Plaintiff was authorized by her healthcare provider to return to light duty. Plaintiff did not return to work at that time due to her condition.

14. Again in or around May 2019, Plaintiff was authorized to return to work by her healthcare provider with work restrictions. Plaintiff was restricted to work four-hour days for four weeks, then six-hour days for two weeks before being re-evaluated at her next appointment.

15. Plaintiff returned to work subject to her work restrictions but shortly after Plaintiff returned to work, she fell in her garage due to her surgically repaired ankle giving out.

16. Plaintiff was given a boot by her healthcare provider and told that she could return to work with the same restrictions provided to her in May 2019, but was told by the SCDC in June 2019 that she could not return to work unless she had no work restrictions.

17. In or around September 2019, Plaintiff notified SCDC that she had work restrictions when she was hired, had worked for four years with those work restrictions, and that as of that date, those work restrictions had not changed. Still Plaintiff was not returned to work by the SCDC.

18. Because SCDC would not let her return to work, Plaintiff sought guidance from the SCDC as to her options in the fall of 2019.

19. In or around October 2019, Plaintiff was provided work restrictions from her health care provider to provide to SCDC. Those work restrictions included the following: 1. No lifting greater than 10 pounds, 2. No pushing greater than 15 pounds, 3. No pulling greater than 15 pounds, and 4. No climbing ladders, stairs, stooping, bending, kneeling, crawling or running.

20. Plaintiff could perform the duties of her job (which were mostly sedentary) with those work restrictions as they were similar to the restrictions she had when she began working for SCDC.

21. Plaintiff, however, was not returned to work and from October 2019 through July 2020, Plaintiff was required to constantly call for updates on her work status. The SCDC made no efforts to respond to Plaintiff's inquiries and did not contact Plaintiff during that time. Further, the SCDC did not invite Plaintiff to a meeting to discuss her work restrictions and/or any accommodations which may have been needed and/or provided. Essentially, the SCDC left Plaintiff in limbo without knowing if she had a job, or would ever be able to work again in the future for the SCDC.

22. In or around July 2020, Plaintiff provided updated restrictions from her healthcare provider, which were identical to the ones issued in October 2019. However, she still was not returned to work and again, Plaintiff was required to contact the SCDC for updates. When she telephoned the SCDC for updates, she was told the SCDC was working on it but then would not receive any further communication.

23. Despite providing updated restrictions in July 2020, Plaintiff was still not asked to meet or discuss reasonable accommodations and/or her work restrictions.

4

24. When Plaintiff was not returned to duty throughout 2020, Plaintiff again presented her work restrictions to the SCDC in January 2021.

25. Again, the SCDC did not respond and took no action to return her to work or to engage in any interactive process meeting to discuss her restrictions or return to work.

26. Due to the lack of response and movement from the SCDC in returning Plaintiff to work, Plaintiff retained an attorney in or around February 2021.

27. Plaintiff's attorney sent a letter to the SCDC outlining the chronology of events and demanding a response with regard to Plaintiff's work restrictions and for Plaintiff's return to work date.

28. On or about March 10, 2021 and likely after realizing that Plaintiff should have been returned to work almost two years prior, the SCDC responded and expressed a willingness to return Plaintiff to work. Again, Plaintiff's work restrictions were no different in March 2021 as they were in October 2019, and Plaintiff should have been returned to work in June 2019.

29. By that point, however, and because she had no knowledge as to if or when she would be returned to work, Plaintiff had searched for other jobs and had been offered an attractive job.

30. Thus, on April 14, 2021, Plaintiff resigned her employment and accepted another job with a different entity. In resigning her employment, Plaintiff wrote, "In submitting my resignation, it's important to note that in my experience at the Department of Corrections, the greatest challenges stemmed from the lack of administrative and managerial support of those who are assigned to execute the efficiency at the assigned institution. Due to the ambiguous policies and procedures and what appears to be a complete lack of communication, I was deprived of fair

and equitable treatment because of my injuries. The failure to be treated fairly made me uncomfortable in returning to work and has led me to submit my resignation."

## FIRST CAUSE OF ACTION

### Violations of the Americans with Disabilities Act

31. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

32. Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that she suffered a previous injury requiring surgery on her right ankle and extensive rehabilitation, Defendant perceived her to have a disability, she had the requisite education and training to perform and can perform the essential functions of her job as a Switchboard Operator/Administrative Assistant, and did in fact hold that job.

33. Plaintiff suffered from an actual disability in that she had surgery on her right ankle requiring extensive rehabilitation, a physical condition which substantially limited several major life activities. 42 U.S.C. §12102.

34. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5) in that it is engaged in an industry affecting commerce and has more than fifteen (15) employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

35. Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

36. Due to Plaintiff's actual and/or perceived disability, Defendant refused to allow her to return to her position from June 2019 to March 2021.

37. Defendant has a duty to engage in the interactive process and offer a reasonable accommodation once it is put on notice of an employer's disability and need for accommodation.

38. Defendant refused to allow Plaintiff to return to her original position, or any position, and did not offer a reasonable accommodation in order to fulfill its duty to engage in the interactive process, even though it was not even clear she was need one due to the nature of her job as an administrator.

39. Plaintiff has been damaged by Defendant's violations of the ADA as Plaintiff has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress and mental pain and anguish.

40. Plaintiff is entitled to her attorney's fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

41. Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. §12117(a) including equitable relief.

**WHEREFORE,** Plaintiff Denise Ravenel prays for judgment against Defendant South Carolina Department of Corrections in a just and equitable sum of actual, liquidated and punitive damages, for the costs of this action including attorney's fees, and for such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

BRETT M. EHMAN

/s/ Brett M. Ehman
Brett M. Ehman
Fed. Id. No. 12844
S.C. Bar No.: 102443
2971 W. Montague Ave., Suite 203
N. Charleston, SC  29418

843-225-3607
brett@ehmanlaw.com

Attorney for Plaintiff

April 18, 2023
North Charleston, South Carolina